```
1                  IN THE UNITED STATES DISTRICT COURT

2                  FOR THE MIDDLE DISTRICT OF ALABAMA

3                          NORTHERN DIVISION

4

5   UNITED STATES OF AMERICA,

6          vs.                      CASE NO.:  2:24-cr-00212-RAH

7   DESTINIE JAMES,

8              Defendant.

9              * * * * * * * * * * * * * * *

10                       CHANGE OF PLEA

11             * * * * * * * * * * * * * * *

12             BEFORE THE HONORABLE KELLY F. PATE, UNITED STATES

13  MAGISTRATE JUDGE, at Montgomery, Alabama, on Thursday,

14  October 17, 2024, commencing at 10:20 a.m.

15                        APPEARANCES

16

17  FOR THE GOVERNMENT:      Mr. James Patrick Lamb
                             Assistant United States Attorney
18                           UNITED STATES ATTORNEY'S OFFICE
                             Middle District of Alabama
19                           131 Clayton Street
                             Montgomery, Alabama 36104
20

21  FOR THE DEFENDANT:       Mr. Benjamin Edward Schoettker
                             BARFOOT & SCHOETTKER, LLC
22                           6771 Taylor Circle
                             Montgomery, Alabama 36117
23

24             Proceedings reported stenographically;

25                transcript produced by computer.
```

1          (The following proceedings were heard before the

2          Honorable Kelly F. Pate, United States Magistrate Judge,

3          at Montgomery, Alabama, on Thursday, October 17, 2024,

4          commencing at 10:20 a.m.)

5          (Call to order of the Court.)

6          (At which time, the defendant was sworn in.)

7              THE COURT:  Good morning.  We are here in

8   United States versus Destinie James, 24-cr-212, for a change of

9   plea proceeding.

10             Let's make counsel appearances, please.

11             MR. LAMB:  Patrick Lamb for the United States, Your

12  Honor.

13             THE COURT:  Good morning.

14             MR. LAMB:  Good morning.

15             MR. SCHOETTKER:  Benjamin Schoettker for

16  Destinie James.  Good morning, Your Honor.

17             THE COURT:  Thank you.  Good morning.

18             All right, Ms. James.  I understand you intend to

19  change your plea pursuant to a plea agreement, and we will get

20  to your plea in a few moments.  But there are a number of

21  things that we have to cover first.

22             At the outset here, let me remind you that you have

23  just taken an oath to tell the truth.  That means if you fail

24  to tell the truth or if you leave out important information,

25  your testimony here can form the basis of a felony prosecution

1   for perjury or for making a false statement.  Do you understand
2   that?
3            THE DEFENDANT:  Yes, ma'am.
4            THE COURT:  You need to also know that your testimony
5   here can be used against you in any other proceeding.  It's
6   important that you understand that particularly because at some
7   point during our proceeding today, you'll be asked to make
8   factual admissions in open court, and so you need to know that
9   your testimony can be used against you.  Do you understand?
10            THE DEFENDANT:  Yes, ma'am.
11            THE COURT:  It is your right to change your plea and
12   to proceed with a guilty plea, but in order for the Court to
13   accept a guilty plea, I have to make certain findings.  I have
14   to find that, for example, your plea is made freely and
15   voluntarily and, as I've noted, that there's a factual basis to
16   support it.  If I make those findings, then I'll make a
17   recommendation to the district judge that he accept your plea.
18   If he does so, then he will be the one to set you for
19   sentencing.  Do you understand that?
20            THE DEFENDANT:  Yes, ma'am.
21            THE COURT:  Okay.  Would you tell me your full name,
22   please.
23            THE DEFENDANT:  Destinie James.
24            THE COURT:  Okay.  And how old are you?
25            THE DEFENDANT:  22.

1              THE COURT:  How far did you go in school?

2              THE DEFENDANT:  I'm in my senior year of college.

3              THE COURT:  Okay.  So it's fair to say, Ms. James,

4    that you can read and write and understand English fine?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Did you read your plea agreement?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Each and every page of it?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  Did you understand what you read?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Okay.  Did you have the opportunity to ask

13   your lawyer questions about the plea agreement?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Did he answer any questions you had?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Okay.  Ms. James, have you been treated

18   recently for any addiction to drugs or alcohol?

19             THE DEFENDANT:  No, ma'am.

20             THE COURT:  Have you been treated recently for any

21   mental illness?

22             THE DEFENDANT:  No, ma'am.

23             THE COURT:  Today, are you under the influence of any

24   drug or alcohol or medication?

25             THE DEFENDANT:  No, ma'am.

1          THE COURT:  Okay.  And you understand what we're doing

2   here today?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Mr. Schoettker, any concerns about your

5   client's competence to enter a plea?

6          MR. SCHOETTKER:  No, ma'am.

7          THE COURT:  Mr. Lamb?

8          MR. LAMB:  There are none, Your Honor.

9          THE COURT:  Thank you.

10         I do find that based on my own personal observations

11  and Ms. James's answers to my questions, that she is competent

12  to understand our proceeding and to enter a knowing plea, and

13  so we will move forward here.

14         The next thing I want to cover with you, Ms. James, is

15  your consent to my conducting this plea proceeding.  As I

16  mentioned, the district judge is the one responsible for

17  sentencing you, and you do have a right to have the district

18  judge take your plea.  With your consent and permission, I can

19  conduct this plea proceeding, and if I make the findings that

20  I've already mentioned to you, then I can make a recommendation

21  to the judge -- the district judge, rather, that he accept your

22  plea.

23         Have you had the opportunity to discuss this with your

24  attorney?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  And is it your desire that I take your

2     plea today?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  I have here on the bench with me a notice

5     regarding entry of a plea of guilty and consent.  It appears to

6     be signed by the defendant and her counsel, dated today,

7     August -- excuse me -- October 17, 2024.

8          Ms. James, is that your signature on the consent?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  I do find, then, that the defendant has

11    knowingly consented to my conducting the proceeding, so that's

12    what we will do.

13         I want to talk now about your rights, Ms. James,

14    including rights that you'll be giving up by entering a guilty

15    plea.  First, let me remind you that you have the right to have

16    an attorney representing you throughout all parts of these

17    criminal proceedings and assisting you in your defense, and

18    your right to have counsel representing you exists whether you

19    plead guilty or not guilty.  Do you understand that?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  You do have the right to maintain a

22    not-guilty plea, and you have rights under the Constitution and

23    the laws of the United States.  You have the right to a speedy

24    and public trial and to be tried by a jury of 12.  All 12 of

25    those jurors would have to unanimously agree on your guilt

1  before you could be convicted.  You're presumed innocent, and

2  the United States has to prove your guilt beyond a reasonable

3  doubt.

4          At trial you have the right to confront and

5  cross-examine the Government's evidence and any witnesses it

6  may present.  You get to do the same thing at trial, present

7  your own evidence, present your own witnesses.  At trial you

8  can testify, if that's what you want to do, but you can also

9  choose not to testify, and that choice to testify or not is

10 entirely your own.  Do you understand that?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Now, if you enter a guilty plea to

13 Count 1, conspiracy to commit wire fraud, bank fraud, and mail

14 fraud, then you will be waiving and giving up all of those

15 rights that I've just told you about.  So if your guilty plea

16 is accepted after I make a recommendation, then the next thing

17 that would happen would be your sentencing.  There would be no

18 trial.  Do you understand that?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  And you will have waived your right to a

21 trial and a right to all of those that we've just discussed

22 that are associated with trial.  Do you understand that as

23 well?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  You need to also know, Ms. James, that

```
1    that count, Count 1, conspiracy to commit wire fraud, bank
2    fraud, and mail fraud, is a felony offense.  So if your guilty
3    plea is accepted, you may be deprived of valuable civil rights.
4    That includes things like the right to vote, the right to hold
5    public office, the right to serve on a jury, and the right to
6    possess any kind of firearm.  Do you understand that?
7              THE DEFENDANT:  Yes, ma'am.
8              THE COURT:  Have you had the opportunity, Ms. James,
9    to discuss all of these possible consequences of a guilty plea
10   with your attorney?
11             THE DEFENDANT:  Yes, ma'am.
12             THE COURT:  And have you asked him any questions that
13   you may have had?
14             THE DEFENDANT:  Yes, ma'am.
15             THE COURT:  Did he answer your questions?
16             THE DEFENDANT:  Yes, ma'am.
17             THE COURT:  Okay.  Then, let's talk now about the plea
18   agreement.  You-all have a copy there, Mr. Schoettker?
19             MR. SCHOETTKER:  Yes, ma'am.
20             THE COURT:  Okay.  In the bottom right-hand corner of
21   each page of the plea agreement, I see a set of initials.  It
22   looks like a D. and a J. to me.
23             Are those your initials?
24             THE DEFENDANT:  Yes, ma'am.
25             THE COURT:  And is that a D. and a J.?
```

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do your initials on each page of the plea

3    agreement, Ms. James, indicate that you've read that page of

4    the plea agreement?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Does it indicate also that you understood

7    what you read?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  The plea agreement has two pages that bear

10   a signature above a signature line for Destinie James,

11   defendant.  Are those your signatures on those two pages?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  And once again, does your signature

14   indicate that you've read the entire plea agreement?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  And does it indicate that you understood

17   what you read?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  Does the plea agreement represent your

20   entire agreement with the Government?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  Has anyone threatened you in any way in

23   order to induce you to sign the plea agreement?

24         THE DEFENDANT:  No, ma'am.

25         THE COURT:  Has anyone made any promise to you that's

1  not contained in the plea agreement in order to get you to sign

2  it?

3         THE DEFENDANT:  No, ma'am.

4         THE COURT:  And, Mr. Schoettker, did you convey all

5  formal plea offers to the defendant?

6         MR. SCHOETTKER:  Yes, Your Honor.

7         THE COURT:  Thank you.

8         All right.  One other item of business I want to cover

9  before I ask the Government to summarize the agreement.

10  You-all made some changes on page 10 of the plea agreement, and

11  we'll talk about that in detail in a moment.

12         For now I want to confirm, Ms. James, on page 10 of

13  the plea agreement, in paragraphs 31G and 31H, there are some

14  phrases that have been struck-through, and I see a set of

15  initials above those changes.  I want to confirm, first, in

16  those two paragraphs that I've just referenced, did you make

17  the changes that are indicated there?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  And are those your initials?  It looks

20  like maybe D. P. J.?

21         THE DEFENDANT:  It -- it says, "D. J."

22         THE COURT:  Okay.  It says, "D. J."

23         THE DEFENDANT:  Those are my initials.

24         THE COURT:  Okay.  Well, it looks different than the

25  initials at the bottom of the page.  Is there a difference?

1          THE DEFENDANT:  No.  I think it's just the way I --

2          THE COURT:  Okay.  But both are your initials?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Okay.  And your initials there indicate

5    that you agree with the change that's made there in those two

6    paragraphs?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Okay.  All right.  We'll talk about those

9    in particular in a few moments.

10          For now, Mr. Lamb, would you summarize the agreement,

11    please.

12          MR. LAMB:  I'd be happy to, Your Honor.

13          Judge, this is a plea agreement under 11(c)(1)(A) and

14    11(c)(1)(B).  Under 11(c)(1)(A), the Government agrees not to

15    bring any additional charges for the conduct described in the

16    indictment or for relevant conduct as determined by the Court

17    at the sentencing hearing.

18          Under 11(c)(1)(B), Your Honor, the Government agrees

19    to recommend a sentence within the advisory guidelines range;

20    that if appropriate, to recommend full acceptance of

21    responsibility; and for purposes of calculating the advisory

22    guidelines range, the Government will recommend that the loss

23    amount is between 250,000 and not more than $550,000, that

24    there were ten or more victims, that the crime was accomplished

25    by sophisticated means, and that the defendant should be

1    treated as a minor participant under 3B1.2(b).

2            Judge, the defendant agrees to plead guilty to Count 1

3    and make factual admissions in open court.  She reserves the

4    right to request a downward variance, agrees that the

5    guidelines provision in paragraph 4 shall apply at the

6    sentencing hearing, and waives her right to appeal or for

7    collateral relief except as to prosecutorial misconduct or

8    ineffective assistance of counsel.

9            THE COURT:  Thank you, Mr. Lamb.

10           Mr. Schoettker, do you agree with the Government's

11   summary?

12           MR. SCHOETTKER:  I do, Your Honor.

13           THE COURT:  And, Ms. James, do you also agree with the

14   Government's summary?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Let's talk about a few of these items in

17   the plea agreement with a bit more detail.  On pages 2 and 3,

18   there are paragraphs that reference Rule 11(c)(1)(B).  For

19   example, paragraphs 1, 2, and 4.  Those I want to make sure you

20   understand are recommendations to the Court.  In other words,

21   the Court will not be bound by those terms of the plea

22   agreement.  Do you understand that?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  So, for example, as to the Government's

25   agreement to recommend a sentence within the advisory

1    guidelines range as calculated by the Court at sentencing and

2    the Government's agreement to recommend that for purposes of

3    making that calculation, that those provisions set out in

4    paragraph 4 are part of the Government's recommendation; the

5    Court can reject each of those recommendations.  Do you

6    understand that?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  And if the Court were to reject the plea

9    agreement's recommendations, you would not be permitted to

10    withdraw your guilty plea on that basis alone.  Do you

11    understand that as well?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Okay.  Now, those provisions are different

14    than the binding terms of the plea agreement, like in

15    paragraph 6, at the bottom of page 3 and other places where you

16    see reference to Rule 11(c)(1)(A).  Those are binding terms of

17    the plea agreement, which means that if the Court chooses not

18    to follow a binding term, you would be given the opportunity to

19    withdraw your plea and go to trial if that's what you wanted to

20    do.  Do you understand that?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  And do you understand the difference

23    between those provisions?

24            THE DEFENDANT:  Yes, ma'am.

25            THE COURT:  Mr. Lamb mentioned in his summary also the

1    plea agreement's appeal waiver.  It appears on the bottom of

2    page 10 of the plea agreement under the section titled "The

3    Defendant's Waiver of Appeal and Collateral Attack."

4              Ms. James, I want to be sure that you understand that

5    you have a right and the Government has a right to appeal any

6    conviction or sentence here, but if you plead guilty with this

7    plea agreement and that provision there at the bottom of

8    page 10, you're waiving or giving up your right to appeal or

9    collaterally attack all or part of any sentence except as to

10   grounds of ineffective assistance of counsel or prosecutorial

11   misconduct.  Do you understand that?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Ms. James, are there any provisions of

14   your plea agreement that you do not understand?

15             THE DEFENDANT:  No, ma'am.

16             THE COURT:  And so are you willing, then, to be bound

17   by each and every term of your plea agreement?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Let's talk now a bit more about the

20   sentencing guidelines.  We've just made reference to the

21   district judge making a determination as to what the advisory

22   guidelines range might be here, and I want to be sure you

23   understand that the sentence that the district judge determines

24   is applicable under the guidelines range may be different from

25   any estimate your attorney has provided to you.  Do you

1    understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And do you understand that it could be

4    higher than any estimate he's provided to you, and if that were

5    to happen, you would not be permitted to withdraw your guilty

6    plea on that basis alone?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  The district judge will consult a number

9    of things to determine what the advisory guidelines range may

10   be, including a presentence investigation report.  That's a

11   report that's prepared by probation.  After they interview you,

12   they'll prepare that report.  You'll get a copy of it.  You'll

13   have the opportunity to make objections to the report.

14             Have you had an opportunity to discuss this with your

15   attorney?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  And do you consent to our ordering a

18   presentence investigation report?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  I have here on the bench a consent to

21   institute a presentence investigation and disclose the report

22   before conviction or plea of guilty.  It bears signature lines

23   for Destinie James and her counsel.

24             Ms. James, is that your signature?

25             THE DEFENDANT:  Yes, ma'am.

```
1           THE COURT:  All right.  Then we will order the
2    presentence investigation report.
3           A few other things I want to note for you about the
4    sentencing guidelines.  First, they're advisory, and that means
5    the district judge is not bound by them.  The district judge
6    will consult a number of things and may make departures from
7    the guidelines, upward or downward, depending on the
8    circumstances.
9           The district judge will also consider statutory
10   sentencing factors under Title 18 of the United States Code
11   Section 3553(a), again, that may result in a sentence that is
12   greater or lesser than the advisory guideline range.  Do you
13   understand that?
14           THE DEFENDANT:  Yes, ma'am.
15           THE COURT:  Have you had a chance to talk with your
16   attorney about how the guidelines might apply here?
17           THE DEFENDANT:  Yes, ma'am.
18           THE COURT:  And has -- have you asked him any
19   questions that you might have had?
20           THE DEFENDANT:  Yes, ma'am.
21           THE COURT:  Okay.  And you got answers to those?
22           THE DEFENDANT:  Yes, ma'am.
23           THE COURT:  All right.  Let's talk, then, specifically
24   now about the charge against you in the indictment.  You
25   received a copy of the indictment with that charge, conspiracy
```

1  to commit wire fraud, bank fraud, and mail fraud?

2         THE DEFENDANT:  Yes, ma'am.

3         THE COURT:  Did you talk with your lawyer about

4  everything that you knew about your case and that charge

5  against you?

6         THE DEFENDANT:  Yes, ma'am.

7         THE COURT:  All right.  Mr. Lamb, would you please

8  review for the defendant the elements that the Government would

9  have to prove if that charge went to trial?

10         MR. LAMB:  Yes, Your Honor.  Conspiracy to commit wire

11  fraud, bank fraud, and mail fraud includes two elements; the

12  first, two or more persons in some way or manner agreed to try

13  to accomplish a common and unlawful plan to commit wire fraud,

14  bank fraud, and mail fraud; and second, the defendant knew the

15  unlawful purpose of the plan and willfully joined in it.

16         THE COURT:  Thank you.  And, Mr. Lamb, the potential

17  statutory penalties for that charge are recited on the first

18  page of the plea agreement.  Has the Government confirmed that

19  those are accurately recited?

20         MR. LAMB:  We have, Your Honor.

21         THE COURT:  Thank you.

22         And, Mr. Schoettker, do you agree?

23         MR. SCHOETTKER:  Yes, ma'am.

24         THE COURT:  Ms. James, do you understand what the

25  Government would have to prove if the case were presented to

1   trial?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Presented to a jury at trial, I should

4   say?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  Okay.  Now, on page 1 of the plea

7   agreement, you see there the potential maximum penalties for

8   that offense.  I want to review them with you.  They include a

9   term of imprisonment of not more than 30 years; a fine of not

10  more than $1 million or twice the value of the property

11  involved in the transaction, whichever is greater, or both the

12  fine and imprisonment; a term of supervised release of not more

13  than five years; an assessment fee of $100; and an order of

14  restitution.

15         Do you understand that those are the potential

16  penalties here?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Do you also understand that -- I've just

19  mentioned it, but I want to be sure you understand -- that

20  restitution may be ordered here?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  The potential penalties include a period

23  of -- include a possible period of supervised release.  If you

24  were given a period of supervised release, Ms. James, it will

25  come with conditions.  I want to be sure you understand that if

1    you were to violate any condition of a supervised release term,

2    you could be given time in prison.  Do you understand that?

3                THE DEFENDANT:  Yes, ma'am.

4                THE COURT:  You need to also know that parole has been

5    abolished.  So if you're sentenced to prison, you will not be

6    released on parole.  Do you understand that as well?

7                THE DEFENDANT:  Yes, ma'am.

8                THE COURT:  Do you understand all of these possible

9    penalties as we've discussed them?

10               THE DEFENDANT:  Yes, ma'am.

11               THE COURT:  Okay.

12               All right, Mr. Schoettker.  I think we're ready for a

13   factual basis, if you can assist.

14               MR. SCHOETTKER:  Yes, ma'am.

15               All right.  Ms. James, I'm just going to ask you a few

16   questions.  First, I want to start off by having you establish

17   that you understand the purpose or the goal of the conspiracy.

18   And that purpose and goal of the conspiracy was to steal checks

19   from the United States mail and then later alter or forge those

20   checks.  Did you understand that?

21               THE DEFENDANT:  Yes.

22               MR. SCHOETTKER:  And did you also understand that

23   after that was accomplished, the purpose or goal in the

24   conspiracy was to deposit those checks into account holders'

25   bank accounts and withdraw funds out of those same accounts

1    before the banks discovered that they were fraudulent?

2              THE DEFENDANT:  Yes.

3              MR. SCHOETTKER:  And you and other conspirators used

4    wires, specifically mobile phones in your case, to deposit

5    checks and to discuss items of the conspiracy?

6              THE DEFENDANT:  Yes.

7              MR. SCHOETTKER:  You also, at points in time during

8    the conspiracy, received cashier's checks that were a part of

9    the conspiracy and drawn on these accounts that were

10   fraudulently used?

11             THE DEFENDANT:  Yes.

12             MR. SCHOETTKER:  And you received monies off of those

13   checks knowing that you didn't have any legal right to those

14   monies?

15             THE DEFENDANT:  Yes.

16             MR. SCHOETTKER:  You also used electronic wires to

17   communicate with other members of the conspiracy?

18             THE DEFENDANT:  Yes.

19             MR. SCHOETTKER:  During the participation -- in your

20   participation in the conspiracy, you lived in Tuskegee,

21   Alabama?

22             THE DEFENDANT:  Yes.

23             MR. SCHOETTKER:  At the times when you used your

24   electronic device in this conspiracy, you were in Tuskegee,

25   Alabama, at that time?

1          THE DEFENDANT:  Yes.

2          MR. SCHOETTKER:  The mobile deposits were made in

3     Tuskegee, Alabama?

4          THE DEFENDANT:  Yes.

5          MR. SCHOETTKER:  And you received illegal funds in

6     Tuskegee, Alabama?

7          THE DEFENDANT:  Yes.

8          MR. SCHOETTKER:  And you're aware now that Tuskegee,

9     Alabama, is in the Middle District of Alabama?

10          THE DEFENDANT:  Yes.

11          MR. SCHOETTKER:  That's all the questions I have, Your

12     Honor, at this time.

13          THE COURT:  Mr. Lamb, is the Government satisfied with

14     the factual basis for the plea?

15          MR. LAMB:  Judge, we would just proffer to Your Honor

16     that in addition to that, that the wires we've discussed

17     include both Telegram chats that the defendant participated in

18     and financial transactions involving bank clearinghouses.  All

19     of those wires both crossed state lines and also were conveyed

20     by means of interstate commerce, the Telegram chat app and also

21     the federal banking provisions.

22          We would further indicate that the amended paragraphs

23     reference two separate instances that the defendant was in a

24     car containing checks stolen from the mail and fraudulently

25     altered.  On that first indication in 2022, her fingerprint was

1    on one of those checks, and we would proffer that for Your

2    Honor's consideration.

3         THE COURT:  And that's with reference to

4    paragraph 31G?

5         MR. LAMB:  31G and 31H.  31G is the instance where her

6    fingerprint was on one of the stolen checks, and 31H is a

7    separate instance where she was in a car with Hunter Hudson and

8    a variety of checks stolen from the mail.

9         THE COURT:  All right.  Ms. James, do you agree that

10   the items that have just been recited by the Government would

11   be the Government's evidence if the case went to trial?

12        THE DEFENDANT:  Yes, ma'am.

13        THE COURT:  All right, then.  The Court is satisfied

14   with the factual basis for the plea.

15        I have a few more questions for you, Ms. James, before

16   I ask you for your plea.  Are you pleading guilty today freely

17   and voluntarily?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  Are you pleading guilty because you are

20   guilty?

21        THE DEFENDANT:  Yes, ma'am.

22        THE COURT:  Has anyone threatened you, forced you,

23   coerced you, or intimidated you in any way regarding your

24   decision to plead guilty today?

25        THE DEFENDANT:  No, ma'am.

1          THE COURT:  Has anyone made any promise to you that's

2    not contained in the plea agreement in order to induce you to

3    sign it?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  And, Mr. Schoettker, you're not aware of

6    any threats against your client, are you?

7          MR. SCHOETTKER:  No, ma'am.

8          THE COURT:  And you're not aware of any promises

9    outside of the agreement, are you?

10          MR. SCHOETTKER:  No, ma'am.

11          THE COURT:  Mr. Lamb?

12          MR. LAMB:  We are not, Your Honor.

13          THE COURT:  Thank you.

14          Have you had enough time to talk with your attorney?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Okay.  And are you fully satisfied with

17    the way he's represented you?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Has anyone coached you or suggested that

20    you answer untruthfully today?

21          THE DEFENDANT:  No, ma'am.

22          THE COURT:  Have you told the truth?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Is the United States satisfied with the

25    colloquy?

1              MR. LAMB:  We are satisfied, Your Honor.

2              THE COURT:  Is the defense satisfied?

3              MR. SCHOETTKER:  Yes, Your Honor.

4              THE COURT:  Ms. James, do you understand everything

5    that we have talked about?  That includes your rights, the

6    rights that you'll give up by pleading guilty, all of the

7    potential consequences of a guilty plea, the potential maximum

8    penalties associated with Count 1, the sentencing guidelines,

9    and also your plea agreement.  Do you understand everything

10   we've discussed?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  How do you now plead to Count 1,

13   conspiracy to commit wire fraud, bank fraud, and mail fraud in

14   violation of Title 18 of the United States Code Section 1349?

15             THE DEFENDANT:  Guilty.

16             THE COURT:  Please listen carefully, Ms. James, to my

17   findings.  I will ask if you agree with them afterward.

18             It is the finding of the Court that you are alert and

19   intelligent.  I find that you understand the nature of the

20   charge against you, that you understand the potential possible

21   penalties associated with that charge, that you appreciate the

22   consequences of pleading guilty, and so it is the finding of

23   the Court in United States versus Destinie James that the

24   defendant is fully competent and capable of entering an

25   informed plea and that the plea is knowing and voluntary and

1  that it is supported by an independent basis in fact containing

2  each of the essential elements of the offense.

3         Ms. James, do you agree with my findings?

4         THE DEFENDANT:  Yes, ma'am.

5         THE COURT:  I will make a recommendation, then, to the

6  district judge that he accept your guilty plea.  As I've

7  already mentioned, if he accepts the plea, you'll be set for

8  sentencing before him.  That will occur in about 90 days.

9         Mr. Lamb, is there anything else we need to address on

10  our record?

11         MR. LAMB:  Not by the United States, Your Honor.

12         THE COURT:  Thank you.

13         Mr. Schoettker?

14         MR. SCHOETTKER:  Nothing further, Your Honor.

15         THE COURT:  Okay.  Ms. James, I'll remind you that you

16  are released subject to the conditions I previously set.  You

17  will remain on that release pursuant to those conditions, and

18  your continued compliance with each and every one of those

19  conditions is expected.  Do you understand that?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Of course, when Judge Huffaker sets you

22  for sentencing, you will be required to appear.  Do you

23  understand that as well?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  All right, then.  You are released

1  pursuant to the conditions I have already set.  And we are

2  adjourned.

3          (The proceedings concluded at 10:50 a.m.)

1          <u>COURT REPORTER'S CERTIFICATE</u>

2

3          I certify that the foregoing is a correct transcript from

4     the record of the proceedings in the above-entitled matter.

5          This 25th day of February, 2025.

6

7                              <u>/s/ Katie Silas</u>

8                              Official Court Reporter

9                              Registered Professional Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25